Gordon, Secretary of Banking, Appellant, *v.*
Diffenderffer et al.

426

Argued January 8, 1935.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Reynolds D. Brown,* with him *William A. Schnader,* Attorney General, *Shippen Lewis,* Special Deputy Attorney General, and *J. Willison Smith, Jr.,* for appellant.

*Robert T. McCracken,* with him *Ulric J. Mengert* and *Joseph B. Winokur,* for appellees.

OPINION BY MR. JUSTICE SCHAFFER, February 4, 1935:

In this action, William D. Gordon, secretary of banking, in possession of the Girard Avenue Title and Trust Company, seeks recovery from defendants, who are stockbrokers, of certain sums of money improperly taken from the funds of the trust company by one of its officers and used by him in marginal stock speculations with defendants. The jury found a verdict for defendants upon which judgment was entered. Plaintiff appeals.

The material facts to be taken into account are these: Edward A. McVeigh was an officer of the trust company, its assistant secretary and treasurer when the transactions here involved commenced, subsequently its secretary and treasurer. McVeigh called Savoy, an employee of defendants, on the telephone and gave him orders for the purchase of various stocks on margin, telling him in certain instances that the purchases were for the account of John Thompson and in others for the account of James

L. Hall. McVeigh admitted that he probably told Savoy that Thompson and Hall were friends or customers. Hall was nonexistent and Thompson was a brother-in-law of McVeigh, who knew nothing about what was going on. The purchases were really for McVeigh's own account. To meet the marginal requirements, he drew against the funds of the bank to the order of defendants drafts amounting to $20,500 and checks totaling $21,000. The latter were signed by McVeigh with the names of Thompson, who had no account in the trust company, and Hall, who, as before stated, was a myth. McVeigh covered up his embezzlements by false entries on the books of the company. To recover the sums named, this suit was instituted upon the theory that defendants knew or should have known that McVeigh was using the trust company's money for his own account. Appellant's counsel state as the broad question at issue "the responsibility of the defendants for not ascertaining the real identity of the persons for whom McVeigh was acting," and challenge the position taken by the trial judge that liability for failure to inquire would attach only if the defendants acted in bad faith. Summing up their argument they say the gist of the case is contained in a point submitted by them: "If the jury believe that the defendants knew or ought to have known that the accounts opened at the request of McVeigh in the names of Thompson and Hall were really the accounts of the said McVeigh, the plaintiff is entitled to recover."

The lower court, in its opinion dismissing plaintiff's motion for a new trial, says that, on the question of defendants' actual knowledge that McVeigh was purchasing for his own account, binding instructions for defendants might have been proper. We agree, and we think they could have been granted on the question of bad faith also. We have been able to discover nothing in the record indicating bad faith on defendants' part. The transactions so far as defendants were concerned were the not uncommon ones of a bank officer placing orders for cus-

tomers of the bank for the purchase of stock. The fact that the stocks were purchased on margin for the indicated customers implies no bad faith in the matter on the broker's part. Under the circumstances as they were shown it could not properly be said, no bad faith appearing, that there was any duty on the defendants to make inquiry as to Hall and Thompson. Neither the orders to purchase, coming from an officer of the bank for its customers, in the usual course of business, nor the drafts or checks when received should have put the brokers upon notice of anything irregular. There was nothing to indicate to defendants that McVeigh was dealing for himself. There were no circumstances even of suspicion about the transactions now before us. Suspicion arose only when it became apparent that McVeigh was a defaulter.

The learned trial judge in his instructions to the jury followed the rule laid down in the Uniform Fiduciaries Act of May 31, 1923, P. L. 468, 20 P. S., section 3371, which provides that if a check or other bill of exchange is drawn by a fiduciary as such, or in the name of his principal by a fiduciary empowered to draw, the payee is not bound to inquire whether the fiduciary is committing a breach of his obligation in drawing the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation "unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith." This is exactly like the provision of the Negotiable Instruments Act of May 16, 1901, P. L. 194, 56 P. S., section 136, as to what constitutes notice of infirmity in an instrument. That section provides, ". . . the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." In Union Bank & Trust Co. v. Girard Trust Co., 307 Pa. 488, 498, we said: "As the instrument was good on its face, there was

no apparent reason for inquiry; it remained good until shown to have been taken in 'bad faith,' and the burden of proving that was on the plaintiff. . . . Bad faith is not a matter of conjecture; it must be proved, and, like many other facts, may be proved by circumstantial evidence; but it is well settled that it is not sufficient to show suspicious circumstances . . . such as might lead a person, before taking a paper, to make inquiry, but material mala fides must be proved." There was nothing in the receipt of the orders from McVeigh to demand inquiry, and, when the drafts and checks were received, nothing on them indicated bad faith. There was no evidence to show that the defendants knew that the drafts or checks were given to pay a personal indebtedness of McVeigh.

Complaint is made that the trial judge refused to receive in evidence a by-law of the New York Stock Exchange, of which defendants were members, requiring members "to use due diligence to learn the essential facts relative to every customer and to every order or account accepted by them; also as to the possible use of a name for the account other than that of the party interested." Objection is also made to the exclusion of certain other rules covering speculative accounts in which an employee of a bank or trust company is interested. We think the court was correct in excluding the rules upon the grounds that the plaintiff cannot invoke a rule of the stock exchange which is binding only upon its members, and that the measure of duty of defendants to plaintiff rests upon the law of the Commonwealth and cannot be increased or diminished by the rules of a private organization.

Appellant made another offer of proof, the rejection of which he claims to be error. He sought to prove by a broker that "as between reputable banks and reputable brokers, the only case in which banks and employees of banks are in the habit of ordering the purchase of stocks from brokers is the case where the customer of the bank has arranged with the bank for the payment in full for

the securities to be purchased; that it is irregular and suspicious on its face for a bank officer to assist a customer in opening a margin account with the broker." The offer was excluded on the ground, among others, that it involved the statement of the opinion of the witness on the transactions in question and not proof of a custom. We think there was no error in the ruling. Even if the proffered testimony amounted to showing a custom, which we think it would not do, the custom could not override the law. It was inadmissible for the further reason that it attempted to attribute certain qualities, effects, rights or liabilities to the alleged custom: 4 Wigmore on Evidence, page 170, section 1954.

The assignments of error are overruled and the judgment is affirmed.